UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

AUG 1 6 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-535-GWU

ELISHA D. FARMER,                                                    PLAINTIFF,

VS.                     **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to
     Step 4. If no, the claimant is not disabled. See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

Farmer

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Farmer

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Farmer

> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Farmer

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Farmer

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.  Varley  v. Secretary of Health and Human

Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Elisha D. Farmer, was found by an Administrative Law Judge

(ALJ) to have "severe" impairments consisting of discogenic and degenerative

disorders of the lumbar spine, post laminectomy syndrome, major depression (in

partial remission), and a history of polysubstance abuse (alcohol and cocaine).  (Tr.

17).  Nevertheless, based in part on the testimony of a vocational expert (VE), the

ALJ determined that Mr. Farmer retained the residual functional capacity to perform

a significant number of jobs existing in the economy and, therefore, was not entitled

to benefits.  (Tr. 20-3).  The Appeals Council declined to review, and this action

followed.

At the administrative hearing, the ALJ had asked the VE whether a person of

the plaintiff's age of 27 years, high school education, and work experience as a truck

driver and toll booth attendant could perform any jobs if he were capable of "light"

level exertion, and also had the following non-exertional impairments. (Tr. 280).  He:

7

(1) could sit, stand, and walk six hours each out of an eight-hour day, but with a sit/stand option at 30 minute intervals; (2) could not climb ladders, ropes, or scaffolds; (3) could occasionally crawl, stoop, and climb ramps and stairs; (4) could frequently kneel and crouch; (5) needed to avoid unprotected heights, moving machinery, and vibration; (6) could handle simple to moderately complex instructions and tasks; and (7) had adequate focus, concentration, and persistence to complete and carry out a work assignment associated with a medium to lower stress work environment, where interaction with the public was no more than infrequent and superficial. (Tr. 280-1). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the "regional"[1] and national economies. (Tr. 281-2).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Farmer's primary complaint of disability involved back problems, which he testified had forced him to stop working in January, 2001. (Tr. 262-3). Records from prior to his onset date show that he had undergone a bilateral L4-L5 diskectomy for a herniated disc in May, 1985, but had been able to return to work through 2000 (Tr. 118, 134). During that year, while the plaintiff was still working, a neurosurgeon, Dr.

---

[1]The "region" was not defined.

8

Leon Ravvin, noted limited lumbar spinal movement but no weakness, sensory, or reflex deficits, and an MRI showed degenerative changes and bulges, but the physician recommended conservative management and gave only a temporary excuse from work. (Tr. 118). An orthopedist, Dr. William Lester, also examined the plaintiff in 2000, and found tenderness and muscle spasms but also normal motor and reflex examinations. (Tr. 134-5). Dr. Lester conducted a functional capacity evaluation on December 21, 2000 that indicated that Mr. Farmer was capable of lifting and carry 20 pounds with a restricted ability to climb. (Tr. 123-7).

While Mr. Farmer obtained treatment from other physicians after his onset date in January, 2001, none of these sources list specific functional restrictions.

Mr. Farmer underwent pain management treatment in 2001 and 2002 from Dr. Michael Vories, who diagnosed lumbago with post laminectomy syndrome and prescribed Percocet and Ibuprofen. (Tr. 138, 153, 156). Physical findings included tenderness and muscle spasms but reflexes were normal. (Tr. 156). His family physician, Dr. Anita Cornett, treated Mr. Farmer with pain medications after he was no longer able to afford Dr. Vories, and continued to prescribe medications, although at one point in November, 2002 she had a "long discussion" about a drug screening which failed to show that he was taking his pain medication at all. (Tr. 164, 172). She also prescribed Zoloft for depression, which the plaintiff indicated was working well. (Tr. 172, 175-6).

9

Mr. Farmer received further examinations from Neurosurgeon John Gilbert beginning in March, 2003. Dr. Gilbert obtained an MRI of the lumbosacral spine showing a large disc herniation producing a significant degree of spinal stenosis at L4-L5 (Tr. 177), and planned to obtain an additional MRI with contrast (Tr. 183). His examination showed no tenderness or spasm, normal reflexes and sensation, but positive straight leg raising on the right. (Id.). Dr. Gilbert noted that the plaintiff's history was "positive for drug convictions," and he would continue to receive his narcotic medications for Dr. Cornett, although a non-steroidal medication was added. (Tr. 183-4). On a later visit he added the antidepressant Lexapro. (Tr. 180). The MRI with contrast was obtained in August, 2003 and showed a "laminectomy defect" at L4-5 with what appeared to be a moderate posterior combination of disc protrusion and perineural fibrosis. (Tr. 249). There also appeared to be a protrusion causing moderate stenosis at L5-S1. (Id). Mr. Farmer made one further visit to Dr. Gilbert, at which the physician noted that he "discussed" lumbar fusion, but the plaintiff testified that he had "act[ed] like it was a 50-50 chance he could help me" and apparently decided not to have the procedure performed. (Tr. 247, 269).[2]

Unfortunately for the plaintiff, the only opinions regarding functional capacity given after the alleged onset date are from state agency reviewing sources in

---

[2]Dr. Gilbert also noted that, while Dr. Cornett would continue to prescribe medication, he would ask her to wean Mr. Farmer from his Percocet in preparation for surgery. (Id.).

10

Farmer

August, 2002 and March, 2003, who determined that Mr. Farmer could perform light level exertion with occasional climbing of ladders, ropes, and scaffolds, occasional stooping, and occasional crawling. (Tr. 187-96, 222-9). These restrictions are consistent with the hypothetical question, which is clearly supported by substantial evidence in this regard.

The plaintiff alleges that the ALJ did not note the plaintiff's "restricted range of motion" as found by Dr. Lester, but this finding was, in addition to being prior to the onset date, reasonably accommodated by the restriction to occasional stooping in the hypothetical question. The hypothetical was also consistent with Dr. Lester's functional capacity evaluation. The plaintiff also argues that side effects of pain medications were not considered, but does not cite specific restrictions given by a physician due to this cause. Likewise, the hearing decision contains a detailed discussion of the ALJ's evaluation of the plaintiff's complaints of subjective pain, and there is no error in this regard. (Tr. 18-19).

Although the plaintiff does not contest ALJ's hypothetical mental restrictions on appeal, the Court notes that the factors listed are generally consistent with the narrative findings of a consultative psychological examiner, Dr. Gary Maryman, who diagnosed severe major depression without psychotic features (in partial remission), alcohol abuse by history (reportedly in remission), and cocaine abuse by history (reportedly in remission). (Tr. 160-1). State agency reviewers did list certain specific

11

Farmer

restrictions which were not given in the hypothetical, but as they based part of their

conclusions on a finding of "substance addiction" only in partial remission, which is

not a basis for benefits under Public Law 104-121, any error is harmless. (Tr. 198-

200, 211, 222-9, 239).

The decision will be affirmed.

This the _____ /6 _____ day of August, 2006.

_____

G. WIX UNTHANK
SENIOR JUDGE

12